THIRD DIVISION

June 11, 1997

No. 1-96-1749

JAMES J. FINN, CHARLES GILMARTIN, ROBERT HOFFMAN, EARL VONDRASEK, FRANK SCHAFFER, and WILLIAM PRINDIVILLE,

Plaintiffs-Appellees and Cross-Appellants,

v.

BEVERLY COUNTRY CLUB and ALLEN FLAGLER, JOHN MEANY, NEIL RONEY, RICHARD JALOVEC, THOMAS GEARY, EDWARD JOYCE, THOMAS BOYD, EDWARD GOLZ, and JOHN CURTIN,

Defendants-Appellants and Cross-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 94 CH 3926

Honorable

Margaret Stanton 

McBride,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs sued the Beverly Country Club (the Club) and members of its board of governors (the Board) seeking veteran member status and damages.  Plaintiffs alleged breach of contract, breach of fiduciary duty and promissory estoppel.  The trial court granted summary judgment for defendants on the breach of contract and breach of fiduciary duty claims.  After a bench trial, the court ruled in favor of plaintiffs on the promissory estoppel claim.  Defendants appeal, and plaintiffs cross-appeal.  We reverse the judgment of the trial court on the promissory estoppel count and affirm the summary judgment for defendants on the breach of contract and fiduciary duty counts.

The Beverly Country Club is a private social club formed for pleasure, social recreation and the promotion of outdoor sports, especially the game of golf.  The Club's business affairs are managed by a board of governors.   The bylaws provide that "in all questions of administration or interpretation of these [bylaws], or other matters relating to the [bylaws], the decision of the Board of Governors shall be final."  The Board may amend the bylaws by unanimous vote, but must submit amendments for ratification at the next membership meeting.

The Club's bylaws provide that a member who is 70 years old and has been a regular member for 25 years is eligible to apply for veteran membership.  The bylaws further provide:

"Upon application for transfer to Veteran status and appearance before the membership committee, the Board of Governors may from time to time elect any eligible member to veteran status."

A veteran member does not pay dues or special assessments, but must pay a house account.

Excepting Frank Schaffer, plaintiffs met these requirements when they applied for veteran membership.  They allege that, for as long as they have been members, the Board has automatically allowed transfers to veteran membership to applicants who met the requirements.  But their transfers to veteran status were delayed because of actions taken by the Board.  As a result, they sued.

At the subsequent trial on the issue of promissory estoppel, James Finn testified that, in selecting a country club, the Club's veteran member program was one of the features he considered.  Charles Gilmartin testified he decided not to join another country club because he did not want to lose time accumulated toward the 25 years needed for veteran membership at Beverly.  Finn and Gilmartin testified that they understood that the Club promised them an automatic transfer to veteran status upon meeting the eligibility requirements since such transfers had been granted to all qualified applicants for as long as they had been members.  The parties stipulated that, if called to testify, the testimony of the other plaintiffs would be substantially similar to that of Finn and Gilmartin.

Edward Joyce, testifying for the defense, said that in early 1993 the Board became aware of a concern among members that the growth of veteran membership contributed to a financial problem at the Club.  In response, the Board adopted a bylaw that limited the number of golfing veterans to 35 and required golfing veteran members to pay 40% of the regular dues.  The cap on the number of veteran members prevented plaintiffs from becoming golfing veterans when they applied.  At the next annual meeting of the membership, the bylaw was not ratified.

In March 1994 the Board, again concerned about the Club's financial condition, adopted a policy to defer requests for election to veteran member status until the Club had 250 regular members.  

The trial court entered a judgment for the plaintiffs on the promissory estoppel claim.  The trial court dismissed plaintiffs' claim for specific performance as moot because all plaintiffs had been elected to veteran membership while this case was pending.

Defendants assert several errors on appeal: (1) once the trial court found a contract between plaintiffs and the Club, it should have dismissed plaintiffs' promissory estoppel claim; (2) the trial court erred in finding promissory estoppel; and (3) the trial court erred in intervening in the internal affairs of the Club.  We find it necessary to address only the last of these.

As defendants note, Illinois courts have long recognized that voluntary associations have great discretion in conducting their internal affairs.  Their conduct is subject to judicial review only when they fail to exercise power consistently with their own internal rules or when their conduct violates the fundamental right of a member to a fair hearing.  
Lee v. Snyder
, 285 Ill. App. 3d 555, 558-59, 673 N.E.2d 1136 (1996); 
Kendler v. Rutledge
, 78 Ill. App. 3d 312, 316, 396 N.E.2d 1309 (1979).  Generally, a court will not interfere with the internal affairs of voluntary associations absent mistake, fraud, collusion or arbitrariness.  
Proulx v. Illinois High School Ass'n
, 125 Ill. App. 3d 781, 787-88, 466 N.E.2d 620 (1984), citing 4 Am. Jur. 
Associations & Clubs
 §17 (1936).  If there has been no mistake, fraud, collusion or arbitrariness, our supreme court has endorsed the exercise of jurisdiction only when a substantial property, contract, or other economic right that implicates due process is at stake.  
Van Daele
 v. Vinci
, 51 Ill. 2d 389, 394, 282 N.E.2d 728 (1972).  

In granting summary judgment for defendants on the breach of contract count, the trial court found that the Board acted consistently with the Club's bylaws when it imposed the cap on veteran members.  The trial court's review of this case should have ended there.

Plaintiffs argue that, because their injury is economic, judicial intervention is warranted.  But Illinois courts have never held that classifying an injury as economic is sufficient to subject a voluntary association's decision to judicial review.  Not all economic injuries implicate due process concerns.  Review has been limited to cases that concern "economic necessity."  In 
Van Daele v. Vinci
, our supreme court reviewed the decision of the board of directors of Certified Grocers of Illinois, Inc. (Certified), to expel a member when his "opportunity [to earn] a livelihood" was at stake.  
Van Daele
, 51 Ill. 2d at 394.  Certified offered substantial economic benefits to its members, including lower grocery prices and rebates.  
Van Daele
 was an exception to the general rule of nonintervention based on the character of the organization and "its assumption of a purpose which exceeds merely that of a social organization."  
Van Daele
, 51 Ill. 2d at 395.   Unlike Certified, the Beverly Country Club is a social organization and the economic impact asserted by plaintiffs does not affect their economic livelihood.   If we found that plaintiffs had asserted a sufficient economic necessity to warrant review, the requirement set out in 
Van Daele
 would be stretched to a point where it no longer has meaning.  A discount in membership fees at a recreational club does not come near meeting the test of economic necessity present in 
Van Daele
. 

On cross-appeal, plaintiffs contend that the court erred in granting defendants' motion for summary judgment on the breach of contract claim.  Plaintiffs assert that the bylaws are in the nature of a contract between the Club and its members.  See 
Rotary Club v. Harry F. Shea & Co.
, 120 Ill. App. 3d 988, 997-98, 458 N.E.2d 1002 (1983).  Plaintiffs challenge the trial court's conclusion that the Board acted consistently with the Club's bylaws and allege that the Board's policy amounted to an amendment of the bylaws enacted without the required submission to the membership for ratification.  If the Board had violated the Club's bylaws, plaintiffs would have established a circumstance where a court may intervene.  See 
Lee
, 285 Ill. App. 3d at 560; 
Miller v. Suburban Medical Center at Hoffman Estates, Inc.
, 222 Ill. App. 3d 668, 671, 584 N.E.2d 323 (1991).   Plaintiffs argue that under the bylaws the Board only has discretion to decide whether an applicant qualifies for veteran membership, not unlimited authority to grant or deny veteran status.  The bylaws state that the Board "may" elect eligible members to veteran status.  Plaintiffs urge us to consider the Board's history of automatically electing members when interpreting this provision.  But this extrinsic evidence may be considered only if the bylaws are ambiguous.  
Norris v. South Shore Chamber of Commerce
, 98 Ill. App. 3d 32, 34, 424 N.E.2d 76 (1981).  The word "may" denotes discretion, and the bylaws do not limit that discretion.  Even if the use of the word "may" is ambiguous, the separate bylaw giving the Board the power to interpret the bylaws is clear.  The bylaw that reads "in all questions of administration or interpretation of these bylaws, or other matters relating to the bylaws, the decision of the Board of Governors shall be final" is dispositive of the issue.  We agree with the trial court's conclusion that the Board had the power to create the policy.

Plaintiffs argue that if the Board has the final word on interpretation of the bylaws, plaintiffs' rights under the bylaws are illusory and meaningless.  We agree that the Board's authority to interpret the bylaws gives it considerable power to govern its membership.  These are the rules plaintiffs agreed to abide by when they joined the Club.  We have consistently held that "'each person on becoming a member *** agrees to abide by all rules and regulations adopted by the organization.'"  
Lee
, 285 Ill. App. 3d at 559, quoting 
Engel v. Walsh
, 258 Ill. 98, 103, 101 N.E. 222 (1913).

Nowhere in the complaint or in the evidence before the court is there an allegation that the action of the Board was a mistake, fraud, collusive or arbitrary.  Plaintiffs do not contest the evidence that the Board was motivated by the economic well-being of the Club.

This case does not fall within any of the exceptions to the rule that courts will not intrude in the affairs of voluntary associations.

Reversed in part and affirmed in part.

COUSINS, P.J., and GORDON, J., concur.