575 P.2d 1379 (1978)
John MOZINGO, an infant under the age of eighteen years, who sues by Joy Mozingo, as next friend and natural mother, Appellee,
v.
OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION, Board of Education of the Independent School District No. Sixteen, Mayes County, Oklahoma, Jack Dryden, Robert McHugh, and Sally Cox, Appellants.
Mark NEIGHBORS, an infant under the age of eighteen years, who sues by Treba Neighbors, as next friend and natural mother, Appellee,
v.
OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION, Board of Education of the Independent School District No. Sixteen, Mayes County, Oklahoma, Jack Dryden, Robert McHugh, and Sally Cox, Appellants.
Nos. 51484, 51485.
Court of Appeals of Oklahoma, Division No. 1.
February 7, 1978.
Released for Publication March 2, 1978.
*1380 John M. Crockett, Wilkerson, Moore & Jay by Gary M. Jay, Pryor, for appellees.
Fellers, Snider, Blankenship & Bailey by James D. Fellers, K. Nicholas Wilson, Oklahoma City, for appellant.
Released for Publication by Order of Court of Appeals March 2, 1978.
BOX, Presiding Judge:
An appeal by the Oklahoma Secondary School Activities Association (hereinafter referred to as the Association) from the granting of temporary injunctions enjoining the Association from enforcing any rule declaring two high school football players, Mark Neighbors and John Mozingo, appellees, ineligible.
The parents of both Mark Neighbors and John Mozingo reside in the Salina School District. However, John had attended school in Pryor until January, 1977 when he enrolled at Salina. John had participated in football at Pryor in his sophomore year. Mark had attended school for nine years in Locust Grove prior to his senior year in which he enrolled at Salina. Mark had participated in football at Locust Grove in his sophomore year. Both boys are currently in their senior year at Salina and both desired to play football. However, the boys' eligibility was questioned under Rule 8 of the Association. Rule 8 provides, in part:
Section 1(a). A student is eligible in the public high school of the district where the parents are bona fide residents, . . subject to the following provisions:
.....
(i) A student who participates in athletics at any school other than the public high school of the district where the parents reside, ... forfeits his eligibility at all other member schools of the Association ... .
Both Mark and John filed applications with the Association for an exception to Rule 8 under sub-section 1(o), which provides:
(o) The Board of Directors is authorized to grant exceptions to the provisions of this rule and reinstate a student to eligibility when it finds the rule fails to accomplish the purpose for which it is intended, or when the rule works an undue hardship on the student.
Sub-section 1(o) is referred to as the hardship exception.
Hearings for the exceptions for both Mark and John were held on the same day. Following their hearings, the Association's Board of Directors denied the request of both boys for exceptions and found them to be ineligible to play football under Rule 8, section (i). Thereafter, each student, through a parent, petitioned the District Court of Mayes County for an order restraining the Association from prohibiting the boys from participating in football. The boys alleged that the denial of the request of each student for an exception to the residence requirements of Rule 8 was arbitrary, capricious and unreasonable. Temporary restraining orders were issued, and following a full hearing, temporary injunctions were issued enjoining the Association from enforcing any rule declaring appellees ineligible to participate in athletics at Salina High School. The Association appealed the granting of temporary injunctions in favor of both Mark and John. However, both appeals were consolidated by order of the Supreme Court.
*1381 The Oklahoma Secondary Schools Activities Association is a voluntary unincorporated association with approximately 491 schools as members. As a general rule, courts should not interfere with the internal affairs of voluntary associations. Board of Regents of the University of Oklahoma v. National Collegiate Athletic Association, 561 P.2d 499, 504. In the absence of mistake, fraud, collusion or arbitrariness, the decisions of the governing body of an association should be accepted by the courts as conclusive. Oklahoma Secondary School Activities Association v. Midget, Okl., 505 P.2d 175; Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023. The Midget case cited with approval, on page 179, Robinson v. Illinois High School Association, 45 Ill. App.2d 277, 195 N.E.2d 38, 43 (1963), as follows:
In the instant case there is no evidence of fraud, collusion, or that the defendants acted unreasonably, arbitrarily, or capriciously. A determination of the ineligibility of plaintiff to play interschool basketball was made by those in whom the constitution, by-laws, and rules of the Illinois High School Association vested the power and duty to make that determination.
In the absence of any evidence of fraud or collusion, or that the defendants acted unreasonably, arbitrarily, or capriciously, the Athletic Association must be, under the authorities cited, permitted to enforce its rules and orders without interference by the courts.
Appellees do not contend Rule 8 is invalid. Furthermore, a similar rule was upheld in Kentucky High School Athletic Association v. Hopkins County Board of Education, 552 S.W.2d 685, 687 (Ky.App. 1977), wherein the Kentucky Court, quoting Marino v. Waters, 220 So.2d 802, 806 (La. App. 1969), held as follows:
The transfer rule of the Louisiana High School Athletic Association has been in effect since around 1920 when the youthful association moved to eliminate the recruiting of high school athletes. The transfer rule, in emphasizing the residence of the parents of the student, is by no means capricious and arbitrary. While it is a rational rule which has apparently produced good results, it is not for this Court to pass upon the merits of this particular rule. This is a matter to be determined by the members of the Association, and it is beyond the power of this Court to impose its ideas of what the rules of the Association should be.
Rather, appellees' contention is that the actions of the Association's Board of Directors were arbitrary and capricious. Appellees urge that the purpose behind the Residency and Transfer Rule was to prevent the recruiting of high school students. Inasmuch as there was no evidence of recruiting in this case, the Board of Directors should have granted an exception under Rule 8, sub-section 1(o), which provides that an exception may be granted when the "rule fails to accomplish the purpose for which it is intended." Although the primary purpose of the Residency and Transfer Rule was to prevent recruiting, Claude White, the Association's Executive Secretary, testified that another purpose behind the rule was to promote stability, which would be maintained when all students met the same eligibility requirements. Therefore, it does not necessarily follow that just because there was no evidence of recruiting the rule failed to accomplish the purpose for which it was intended and an exception should have been granted.
Even if the prevention of recruiting was the sole purpose behind the rule, the mere fact that there was no evidence of recruiting would not mean the Association would have to grant eligibility to Appellees. The Supreme Court of South Carolina in Bruce v. South Carolina High School League, 258 S.C. 546, 189 S.E.2d 817, 819 (1972), stated:
Respondents further charge that the rule is arbitrary in its application to them, because it was adopted to prevent the recruiting of athletes and no provision is made for review in individual cases, so as to grant relief from its provisions where, as in this case, the transfer is voluntarily made without the prohibited element of inducement.

*1382 We are here concerned with the enforcement of a rule adopted by members of a voluntary association to govern competition among themselves in athletic events. The rule, to which the members agreed to be bound, clearly makes students, such as respondents, who transfer from one school to another without a bona fide change of residence ineligible to engage in interscholastic athletics for a period of one year. There are no exceptions or qualifications, nor is any discretion vested in League officials in its application. It applies to all schools and students alike.
In contending that, since they were not recruited and the rule was designed to prevent recruiting, it should not apply to them, respondents confuse the reasons which prompted the adoption of the rule with the method adopted to accomplish the desired goal. Prohibitive administrative difficulties, as well as others, resulting from a determination in each case of the reason prompting the transfer could have properly influenced the member schools to decide that the best method to accomplish the elimination of the evil of recruiting was to bind themselves to adherence to a rule without exceptions or qualifications. The merits of such a rule or the wisdom of its adoption are not for the courts to determine.
The rulings of the Board of Directors would be arbitrary and capricious if the Board either permitted or denied eligibility in some cases similar to those of appellees, while ruling otherwise in other similar cases. The uncontradicted testimony of Mr. White was that he was unaware of any cases where the hardship exception, sub-section 1(o), had been granted under reasonably similar factual situations. The interpretation placed upon sub-section 1(o) is that it was designed to provide an exception for the child who is denied the opportunity to live at home with his parents. Examples given at trial where the hardship exception has been applied include where the child is declared dependent and neglected, becomes a ward of the court, placed in a foster home, is a foreign exchange student or other unusual circumstances. According to the record, the exception has been consistently applied in these situations.
Although the hardship exception is subject to several interpretations, the courts will not substitute their interpretation of the bylaws of a voluntary association for the interpretation placed upon those bylaws by the voluntary association itself so long as that interpretation is fair and reasonable. Kentucky High School Athletic Association v. Hopkins County Board of Education, supra at 687. The Association's interpretation of sub-section 1(o) is fair and reasonable and the Board has acted consistently in the granting and denial of exceptions to Rule 8. There is nothing before this Court to indicate fraud, collusion, or action by the Association that could be found to be unreasonable, arbitrary or capricious. Appellees, John Mozingo and Mark Neighbors, were not entitled to injunctive relief and their prayer for relief should have been denied by the trial court. Eligibility is not a vested right. Morrison v. Roberts, supra 82 P.2d at 1025. We therefore hold that the trial court was in error in granting the temporary injunctions.
Reversed with instructions to the trial court to vacate its temporary injunctions and dismiss appellees' petitions.
REVERSED WITH INSTRUCTIONS.
ROMANG, and REYNOLDS, JJ., concur.